UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARK A. PORRAS, | No. C 12-3005 PJH (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY** |
| vs. | |
| G. D. LEWIS, Warden, | |
| Respondent. | |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254, regarding his inability to accrue good time credits after his validation as a member of a prison gang and transfer to the Secured Housing Unit (SHU). The court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner responded with a traverse. For the reasons set out below, the petition is denied.

**BACKGROUND**

On October 30, 2002, petitioner was sentenced to a determinate term of sixteen years for convictions of second degree robbery, possession of a controlled substance and manufacture, transportation or import of an assault weapon. Respondent's Answer ("Answer"); Exh. 1. On June 13, 2007, petitioner was validated as an associate of the Mexican Mafia prison gang and assessed an indeterminate term in the SHU. *Id.*; Exhs. 2-3. His validation was most recently updated on May 26, 2011. *Id.*

///

California Penal Code § 2933.6 was amended effective January 25, 2010 to make certain prison gang members and associates ineligible for certain time credits. "Notwithstanding any other law, a person who is placed in a Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or an Administrative Segregation Unit for misconduct described in subdivision (b) *or upon validation as a prison gang member or associate* is ineligible to earn credits pursuant to Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or the Administrative Segregation Unit for that misconduct." Cal. Penal Code § 2933.6 (as amended effective Jan. 25, 2010) (emphasis added). The 2010 amendment added the italicized phrase to § 2933.6.

Before the 2010 amendment, "it was apparently possible for validated prison gang members placed in an [administrative segregation unit] to earn conduct credits totaling one-third of their sentences." *In re Efstathiou*, 200 Cal. App. 4th 725, 728 (Cal. Ct. App. 2011). After the amendment, a validated gang member or associate in administrative segregation could not earn such conduct credits. Petitioner contends that his earliest possible release date has been increased by one hundred and fifty-one days as he can no longer earn credits.

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

2

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

**DISCUSSION**

Petitioner asserts that the application of the new law violated his rights under the Ex Post Facto Clause and due process.

**A.   Standard**

Article I, section 10 of the United States Constitution prohibits the States from passing any Ex Post Facto law. "To fall within the *ex post facto* prohibition, a law must be retrospective – that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the offender affected by it,' . . . by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (citations omitted).

In *Lindsey v. Washington*, 301 U.S. 397 (1937), the Court found an Ex Post Facto Clause violation in the application of an amended sentencing statute to a petitioner who

3

committed his crime before its amendment where the amended statute made mandatory that which had been only the maximum sentence under the old statute. *Id.* at 400. Although the prisoner could have been given the same 15-year sentence under both the old and amended statutes, applying the amended statute to him violated the Ex Post Facto Clause. *Id.* at 401. "It is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the fifteen-year term." *Id.* at 401-02.

After *Lindsey*, the Supreme Court summarily affirmed a lower court's finding of an Ex Post Facto Clause violation where the State had amended a statute to forbid a prisoner from earning good conduct deductions for the first six months after his reincarceration following a parole violation. *See Greenfield v. Scafati*, 277 F. Supp. 644 (D. Mass. 1967), *summarily aff'd*, *Scafati v. Greenfield*, 390 U.S. 713 (1968).[1] The lower court held the amendment unconstitutional when applied to an inmate who committed his crime before the law's amendment. At the time the prisoner originally was sentenced, "he was entitled to earn 'good-conduct' deductions from the sentence imposed throughout the period of his incarceration." *Id.* at 644. The state's practice was to identify a tentative date of release by computing at the outset of a prisoner's sentence the total good conduct credits the prisoner could earn. *Id.* at 644-45  If the prisoner misbehaved and failed to earn any of the time credits already deducted, they were forfeited by an appropriate extension of the tentative date of release, although no forfeiture was provided for violating parole. *Id.* The statute later was amended in 1965 to provide that an inmate who was released on parole and violated parole would not be allowed to earn good-conduct deductions for the first six months after he was returned to prison. *Id.* The amendment did not apply to persons then

---

[1] Although *Greenfield* is a summary affirmance, it is a judgment on the merits. *See Hicks v. Miranda*, 422 U.S. 332, 344 (1975). Summary affirmances "prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions," *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (per curiam); *see also Edelman v. Jordan*, 415 U.S. 651, 671 (1974) (summary affirmances are of less precedential value than opinions treating the question on the merits). The Supreme Court later cited the *Greenfield* summary affirmance with approval in *Weaver v. Graham*, 450 U.S. 24, 32, 34 (1981).

4

on parole, but did apply to persons who were still in prison. Although Greenfield had been sentenced before the amendment took effect, he was paroled, and then violated parole after the amendment. *Id.* Upon his return to prison on the parole violation, he was subjected to the amended statute. The district court held the amended statute could not be applied constitutionally to persons such as Greenfield. *See id.* at 646. The Supreme Court summarily affirmed.

In *Weaver v. Graham*, 450 U.S. 24 (1981), Florida changed the formula for calculating good time credits, reducing the credits available for good conduct. The Supreme Court emphasized that the appropriate focus was on whether the new statute objectively "lengthen[ed] the period that someone in petitioner's position must spend in prison." *Id.* at 33. According to the Court, "an inmate who performs satisfactory work and avoids disciplinary violations could obtain more gain time per month under the repealed provision, § 944.27(1) (1975), than he could for the same conduct under the new provision, § 944.275(1) (1979)." *Id.* at 35. Thus, "[f]or prisoners who committed crimes before its enactment, § 944.275(1) substantially alters the consequences attached to a crime already completed, and therefore changes 'the quantum of punishment,'" decreasing the rate at which good time credits could be earned, and effectively increasing the punishment for crimes committed before its enactment. *Id.* at 33 (citation omitted). As a result, the new law ran "afoul of the prohibition" against ex post facto laws. *Id.* at 36.

In *Lynce v. Mathis*, 519 U.S. 433 (1997), the Supreme Court articulated the test as requiring that the law "must be retrospective – that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the offender affected by it' . . . by altering the definition of criminal conduct or increasing the punishment for the crime." *Id.* at 441.[2] The Supreme Court found an Ex Post Facto violation in a change in Florida law concerning provisional early release time credits awarded to inmates to alleviate prison overcrowding.

---

[2] Two years before *Lynce*, the Supreme Court explained that a change in the law that merely deprived a prisoner of an opportunity to obtain an earlier release did not violate the Ex Post Facto Clause where the possibility of increased punishment was speculative and attenuated. *California Dept. of Corrections v. Morales*, 514 U.S. 499, 514 (1995).

Lynce had been convicted of attempted murder and sentenced to 22 years in prison at a time when Florida law provided for early release credits to prisoners if prison populations exceeded certain pre-determined levels. Lynce was released from prison in 1992 based in part on his accumulated 1,860 days of overcrowding credits. Later that year, the Florida legislature enacted a statute canceling the overcrowding credits for certain classes of inmates, including those who (like Lynce) had been convicted of attempted murder. The Florida Attorney General opined that the statute should be applied retroactively, so Lynce was arrested and sent back to prison to serve the sentence remaining without counting the overcrowding credits. *Lynce* focused on whether the changed law increased the punishment, having noted that the operation of the amended law "to effect the cancellation of overcrowding credits and the consequent reincarceration of petitioner was clearly retrospective." *Id.* at 441. The Court held that the new law violated the Ex Post Facto Clause. *See id.* at 441-47. The changed law did not merely remove an opportunity for early release, but instead "made ineligible for early release a class of prisoners who were previously eligible." *Id.* at 447.

## B.  Discussion

### State Petitions

In this case, the superior court rejected petitioner's state habeas petition stating, "[t]he Petition is denied, and the Order to show Cause is discharged. Recent Appellate decisions have held that Penal Code Section 2933.6 does not violate the prohibition against ex post facto laws, and the gang validation process affords inmates adequate due process. See *In re Sampson* (2011) 197 Cal. App. 4th 1234, and *In re Efstathiou* (2011) 200 Cal. Appl. 4th 725." Answer, Exh. 8. The court of appeals also denied his state petition with a citation to *In re Sampson* and *In re Efstathiou*.[3] *Id.*; Exh. 10.

*Sampson*, on which the court of appeal and superior court relied, had rejected an Ex Post Facto challenge to § 2933.6 by another inmate who, like petitioner, had been

---

[3] The California Supreme Court denied the petition without comment or citation.

6

sentenced and validated as a gang member or associate before § 2933.6 was amended. *Sampson* explained that the Ex Post Facto Clauses of the federal and California constitutions were "analyzed identically." *Sampson*, 197 Cal. App. 4th at 1241.  Assuming arguendo that the credit-eliminating amendment to § 2933.6 constituted punishment, the state appellate court in *Sampson* was "not convinced that it punishes the criminal conduct for which petitioner was imprisoned, or that it punishes misconduct that occurred prior to January 25, 2010." *Sampson*, 197 Cal. App. 4th at 1241.

> [I]f the credit eliminating amendment to section 2933.6 constitutes punishment, ex post facto principles do not bar its application to petitioner here, because it does not impose punishment for the offense that gave rise to petitioner's prison sentence.  Rather, if it punishes, it punishes for conduct that occurred after the commission of, or the conviction for, the punishable offense.  In other words, petitioner's ineligibility for conduct credit accrual is not punishment for the offense of which he was convicted.  Nor is it punishment for gang-related conduct that occurred prior to January 25, 2010, since petitioner was not stripped of conduct credits he had already accrued.  It is punishment for gang-related conduct that continued after January 25, 2010.

*Id.* at 1242.  *Sampson* rejected the petitioner's argument that he "'did nothing' after January 25, 2010 to bring himself within the ambit of the amended statute." *Id.*  The court saw ongoing misconduct that could be punished based on its reasoning that prison gangs present a serious threat to the safety and security of California prisons; a regulation prohibits inmates from knowingly promoting, furthering or assisting any prison gang; the validation of a prison gang member or associate is done with procedural protections; and the gang validation represents a determination that the inmate warrants an indeterminate SHU term as a severe threat to the safety of others or the security of the institution.  *See id.* at 1242-43.  The validated "inmate continues to engage in the misconduct that brings him or her within the amendment's ambit" unless and until prison officials release the validated inmate into the general population, or the inmate becomes eligible for inactive review, or the inmate debriefs.  *See id.* at 1243.[4]  In short, what was punished was in-prison conduct

---

[4] *Sampson* also addressed the lower court's concern that the sheer length of time that it took to complete the gang debriefing process could result in the deprivation of credit earning opportunity for an inmate who was no longer engaged in the misconduct of gang affiliation.

7

which occurred after the amendment, not the underlying crime and conviction.

In *In Re Efstathiou*, 200 Cal. App. 4th 725 (Cal. Ct. App. 2011), another California Court of Appeal rejected an Ex Post Facto challenge to § 2933.6 using a similar analysis as to that in *Sampson*. The court distinguished the Supreme Court's decision in *Weaver* by noting that the *Weaver* "inmate's credits were reduced through no fault of his own". *Id.* at 729.

**Analysis**

Petitioner is not entitled to habeas relief because the California court's rejection of his claim was not contrary to, or an unreasonable application of, clearly established Federal law as set forth by the Supreme Court. Specifically, the state court's reliance on *Sampson* and *Efstathiou* to reject petitioner's petition showed that it (1) used the date of in-prison misconduct after the amendment date of § 2933.6 rather than the date of the underlying criminal offense to determine whether the amended law was retrospective, and (2) determined that what was punished, not a past event but the ongoing misconduct of gang association, was not contrary to, or an unreasonable application of, Supreme Court holdings.

The state courts' approach and the *Sampson* and *Efstathiou* decisions on which the state courts relied are not inconsistent with the Supreme Court's holdings in *Weaver* and *Lynce*. Unlike petitioner's situation, *Weaver* and *Lynce* did not involve punishment of any post-conviction misconduct. Instead, in both *Weaver* and *Lynce*, good time credits were unilaterally withdrawn or diminished as a result of a change in the rules, a diminution not triggered by any particular misconduct by the prisoner. The reduction in time credits available to those inmates who demonstrated good conduct effectively punished the original crime rather than any recent conduct of the prisoner. Neither *Weaver* nor *Lynce*

---

The state appellate court noted that there was no evidence that, if the petitioner completed debriefing, he would be denied all the credits he otherwise would have earned after January 25, 2010. 197 Cal. App. 4th at 1243-44. Thus, there was only the speculative and attenuated possibility of increasing the measure of punishment that did not implicate the Ex Post Facto Clause. *Id.* at 1243-44 (citing *Lynce* and *Morales*).

8

precludes changes in law that punish prison misconduct occurring after the change in law. In this regard, § 2933.6 is not being applied retrospectively to petitioner since it penalizes ongoing prison misconduct of participation in prison gangs after it was amended on January 25, 2010.

Petitioner has had no credits taken away and earned credits up until January 24, 2010, when the law was amended.  Answer, Exh. 6, Section D.  Petitioner can choose to drop out of his prison gang and restore his credit eligibility by completing the prison's debriefing process.  Cal. Penal Code § 2933.6(a); Cal. Code Regs. tit. 15, § 3378.1. Instead, petitioner's misconduct continued.

The only Supreme Court decision that supports petitioner's challenge is *Greenfield v. Scafati*, 277 F. Supp. 644, *supra*, *summarily aff'd*, *Scafati v. Greenfield*, 390 U.S. 713 (1968).  *Greenfield* could be read as holding the relevant date for retrospectivity purposes is the date of petitioner's criminal offense rather than the date of the misconduct that impacted the time credits since the district court in *Greenfield* found an Ex Post Facto violation even though a violation of parole which led to the deprivation of credits occurred after passage of the new law.  Unlike *Weaver* and *Lynce*, where good time credits were unilaterally diminished despite the lack of any post-amendment misconduct, in *Greenfield* the disadvantage was incurred as a result of post-amendment misconduct (the parole revocation conduct).  Yet the district court found an Ex Post Facto violation.

However, a summary affirmance by the Supreme Court has a limited precedential value.  *Edelman v. Jordan*, 415 U.S. 651, 671 (1974).  It only prevents a lower court from coming to the opposite conclusion on the "precise issues presented and necessarily decided." *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (per curiam).  The precise issue in *Greenfield* involved the constitutionality of a change in law which effectively increased a sentence upon revocation of parole.  The district court focused particularly on the right to parole and the consequences of denying or burdening that opportunity.  *See Greenfield,* 277 F. Supp at 646.  The district court did not analyze the Ex Post Facto doctrine outside the context of parole revocation; it did not address the situation here where the state has

increased punishment (by denying good time credits) for ongoing prison conduct. While the Supreme Court's summary affirmance in *Greenfield* could be read more broadly to support petitioner's Ex Post Facto claim, given its limited precedential value as a summary affirmance, this court cannot conclude that it must be read so broadly. To read *Greenfield* to effectively bar prisons from enlarging the list of punishable prison misconduct or enhancing penalties therefore, even if prospectively applied, would have sweeping consequences for prison administration; absent a clear holding from the Supreme Court, this court cannot find that such a holding is mandated by clearly established federal law.

Finally, the court notes several appellate courts have adopted views consistent with the California court's analysis of the Ex Post Facto claim herein. *See Ellis v. Norris*, 232 F.3d 619, 620-21 (8th Cir. 2000) (state court's decision that repeal of statute that had allowed prison officials discretion to award additional good time credits did not violate Ex Post Facto Clause was not contrary to or an unreasonable application of clearly established federal law – prisoner received all the accrued extra good time credits and only lost the ability to be awarded additional good time credits); *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000) (rejecting Ex Post Facto challenge to administrative directive adopted ten years after petitioner was sentenced that disallowed good time credits for inmates classified as security risk group safety threat members, because no good time credit earned before the Directive was forfeited and petitioner was not so classified until after the Directive was in effect); s*ee Carey v. Musladin*, 549 U.S. 70, 76-77 (2006) (varying views of lower courts on issue reflects lack of guidance by Supreme Court precedent).[5]

---

[5] The federal district courts that have considered the matter have uniformly rejected habeas petitions asserting the Ex Post Facto challenge to § 2933.6. Some district courts have found no Ex Post Facto violation. *See, e.g., Loredo v. Gipson*, 2013 WL 1281570 (E. D. Cal. 2013); *Mares v. Stainer*, 2012 WL 345923 (E. D. Cal. 2012) (applying amended § 2933.6 to a prisoner who had been convicted and validated before the effective date of the amendment did not violate the Ex Post Facto Clause because the conduct being punished – active association with a gang – is continuing in nature and has continued after the amendment to § 2933.6); *Saavedra v. Cate*, 2012 WL 1978846 (E. D. Cal. 2012) (same). Other district courts have denied relief under § 2254(d) because of the absence of clearly established federal law on point from the Supreme Court. *See, e.g., Nevarez v. Lewis*, 2012 WL 3646895 (N. D. Cal. 2012) (Illston, J.) (finding Ex Post Facto violation, but that the state courts' rejection of the

Petitioner also contends, without providing specific arguments, that § 2933.6 violates the First and Fourteenth Amendments and due process. Petitioner's "conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

The claim also fails to the extent petitioner argues that the denial of credits violates his due process rights in a state created liberty interest. A liberty interest may originate by state action. *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995). The Constitution ensures that a protected liberty interest is free from "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Id.*

Under California law, "[c]redit is a privilege, not a right." Cal. Penal Code § 2933(c). Accordingly, petitioner does not have a federal right to earn prison credits. *Kalka v. Vasquez*, 867 F.2d 546, 547 (9th Cir. 1989). Moreover, petitioner was not deprived of earned credits; rather, only his eligibility or capacity to earn additional credit in light of his gang activity was modified by § 2933.6. For all these reasons his due process challenge is without merit and is denied.

**C.   Appealability**

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

To obtain a COA, petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v.*

---

claim was not contrary to or an unreasonable application of clearly established federal law); *Baisa v. Lewis*, 2013 WL 1117798 (N. D. Cal. 2013) (Koh, J.) (rejecting challenge due to lack of clearly established Supreme Court precedent); *Soto v. Lewis*, 2012 WL 5389907 (N. D. Cal. 2012) (Breyer, J.) (same).

11

*McDaniel*, 529 U.S. 473, 484 (2000). Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard.

Here, the court finds that one issue presented by petitioner in his petition meets the above standard and accordingly GRANTS the COA as to that issue. *See generally Miller-El*, 537 U.S. at 322. The issue is whether the application of the amended law violated his rights under the Ex Post Facto Clause.

Accordingly, the clerk shall forward the file, including a copy of this order, to the Court of Appeals. *See* Fed. R. App. P. 22(b); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

A Certificate of Appealability is **GRANTED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 10, 2013.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.12\Porras3005.hc.wpd